**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 10-cv-02450-REB

MARVIN E. OGDEN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY
DECISION AND REMANDING TO COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#3][1] filed October 8, 2010, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse the Commissioner's decision.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of hip pain and a total hip replacement, bilateral shoulder and knee pain, and obesity. After his application for disability insurance benefits was denied initially, plaintiff requested a hearing before an

---

[1] "[#3]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

administrative law judge. The hearing was held on March 16, 2010. At the time of the hearing, plaintiff was 63 years old. He has a high school education with some college, and past relevant work experience as a farmer. Plaintiff has not engaged in substantial gainful activity since January 17, 2001.

The ALJ found that plaintiff was not disabled prior to June 30, 2002, his date last insured, and, therefore, not entitled to disability insurance benefits. The judge concluded that none plaintiff's alleged impairments were severe. Plaintiff, therefore, was found not disabled at step two of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d

335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. **Id.** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. **Casias v. Secretary of Health & Human Services**, 933

F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

By this appeal, plaintiff contends that, based on the opinion of his treating doctor, he should have been found disabled due to bilateral frozen shoulder syndrome. Of particular relevance in this case, plaintiff's date last insured was June 30, 2002. Accordingly, he must establish that one or more of his impairments became disabling on or prior to that date. *See* 20 C.F.R. § 404.131(b); ***Ivy v. Sullivan***, 898 F.2d 1045, 1048

4

(5th Cir. 1990); **Ward v. Shalala**, 898 F.Supp. 261, 263 (D. Del. 1995).[2] Plaintiff argues that the ALJ improperly ignored the opinion of his treating physician, which suggested disability prior to his date last insured, and as a result also improperly discredited plaintiff's testimony. I agree on both counts, and, thus, remand.

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling 96-2p**, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[3] In

---

[2] This standard does not require plaintiff to prove an inability to engage in substantial gainful activity for a period of twelve continuous months prior to his date last insured, but only that he became disabled on or before that date. *See* 42 U.S.C. § 423(d)(1) (disability established if impairment results in inability to engage in substantial gainful activity that can be expected to last twelve months). So long as that period commences prior to the date last insured, there is no requirement that the entire twelve month period predate the date last insured. *See McQuestion v. Astrue*, 629 F.Supp.2d 887, 901-903 (E.D. Wis. 2009) (citing cases); *see also* **Social Security Ruling** 83-20, 1983 WL 31249 at *1 (SSA 1983) ("Although important to the establishment of a period of disability and to the payment of benefits, the expiration of insured status is not itself a consideration in determining when disability first began.").

[3] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;
5. the consistency of the opinion with the record as a whole; and
6. the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2).

either event, a treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. ***Watkins***, 350 F.3d at 1301; ***Goatcher v. United States Department of Health & Human Services***, 52 F.3d 288, 290 (10th Cir. 1995); ***Frey v. Bowen***, 816 F.2d 508, 513 (10th Cir. 1987).

Plaintiff saw Dr. Fleske for bilateral shoulder pain on December 11, 2000, just weeks prior to his alleged date of onset. Plaintiff reported severe shoulder pain, worse on the right side, which pain interfered with sleeping and lying on his side. Dr. Fleske noted that plaintiff exhibited significantly reduced range of motion in both shoulders, had bilateral "crepitance and tenderness," and was "very apprehensive of movement." Contemporaneous x-rays revealed severe glenohumeral osteoarthritis, with "sclerosis [and] osteophyte formation of a severe degree more noted on the [right] than [left]." Dr. Fleske administered bilateral intra-articular corticosteroid injections at that time. (Tr. 249.)

Plaintiff did not visit Dr. Fleske again for complaints of shoulder pain until April 12, 2006.[4] At that time, Dr. Fleske gave plaintiff a number of steroid injections in his shoulders and fingers. He also noted that plaintiff had a recent CT scan of his shoulder, which showed "severe degenerative changes with some posterior erosion and osteophyte formation." He discussed a shoulder prosthesis with plaintiff and noted that plaintiff would probably have to consider a total shoulder replacement. It appears that

---

[4] Plaintiff had seen Dr. Fleske for complaints of severe hip pain in 2005 and 2006 and for follow up of a total hip replacement in 2006. (Tr. 246-248.) Plaintiff testified at the hearing that he did not see Dr. Fleske more frequently because the doctor's office was in Great Bend, Kansas (*see* Tr. 243), a "long ways" from Crestone, Colorado, where plaintiff lives (Tr. 25). The court notes that, according to Yahoo Maps!, the driving distance between Crestone (approximately 150 miles southwest of Pueblo, Colorado) and Great Bend (approximately 123 miles northwest of Wichita) is some 470 miles.

plaintiff initially scheduled such surgery and subsequently cancelled it. (Tr. 245.) At the hearing, plaintiff testified that he did not follow through on the shoulder replacement surgery because he did not have health insurance. (Tr. 25.)

In March, 2010, Dr. Fleske completed a form suggesting that as of December 11, 2000, plaintiff suffered from severe shoulder glenohumeral osteoarthritis, which rendered him able to lift no more than 20 to 30 pounds, restricted the use of his upper extremities in handling and fingering on both right and left occasionally (*i.e.*, up to one-third of the work day), and on reaching on the left occasionally and on the right seldom (*i.e.*, up to one hour a day). He further opined that, based on his April, 2006, examination and review of the CT scan done at that time, and comparing those materials with the examination notes and x-rays taken in 2000, these functional limitations had not changed in the interim. In addition, he stated that plaintiff's condition would not have been improved with any course of treatment. (Tr. 395-398.)

The ALJ's treatment of Dr. Fleske's opinions consists of a single sentence:

> The functional ability form . . . provided to Leonard Fleske, M.D., by the claimant's attorney, is not given any weight, as it was completed almost 10 years after the December 11, 2000, examination it was based on and years after Dr. Fleske last saw the claimant.

(Tr. 13.) Initially, I note that, in the absence of any contemporaneous statement of disability elsewhere in the record, this same criticism could be applied to *any* medical source who might have attempted to infer an onset date that was itself a decade in the past. *See* **Social Security Ruling 83-20**, 1983 WL 31249 at *3 (SSA 1983) ("Determining the proper onset date is particularly difficult, when, for example, the

alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process."). To that extent, the ALJ's rationale for rejecting Dr. Fleske's opinion makes little sense. More to the point, however, it fails to give appropriate weight to the opinion of plaintiff's treating source.

Dr. Fleske's opinion had a "legitimate medical basis," as required to render a retrospective opinion on disability. ***See id.*** In 2000, Dr. Fleske diagnosed plaintiff with severe glenohumeral osteoarthritis, little more than a month prior to his alleged date of onset. ***See Hamlin v. Barnhart***, 365 F.3d 1208, 1215 (10th Cir. 2004) (evidence prior to onset date of disability or after date last insured may be considered to extent it sheds light on disability during relevant time period).[5] His findings and diagnosis following the 2006 examination were similar. When Dr. Fleske was asked in 2010 to opine as to whether plaintiff's condition imposed particular functional limitations in 2000, he had available to him his own examination notes, x-rays from 2000 and the CT scan from 2006 to compare, and whatever independent memory he had of plaintiff's condition at those times.[6] He, therefore, was in a unique position to infer that plaintiff's condition imposed particular functional limitations prior to his date last insured, despite the lapse

---

[5] Thus, the ALJ's notation of the lack of medical evidence during the period between plaintiff's alleged date of onset and the date last insured (Tr. 12) is not dispositive of the issue.

[6] The ALJ also referenced the fact that the form Dr. Fleske completed had been furnished to him by plaintiff's attorney. (Tr. 13.) Although the ALJ may question a physician's credibility on that basis, he may not automatically reject a physician's opinion for that reason. ***See Hinton v. Massanari***, 13 Fed. Appx. 819, 824 (10th Cir. July 3, 2001).

of time.  Moreover, although a retrospective *diagnosis* can provide no basis for a finding of disability absent evidence of an actual impairment prior to the date last insured, **Flint v. Sullivan**, 951 F.2d 264, 267 (10th Cir. 1991), Dr. Fleske's opinions are not mere diagnoses but actual statements of plaintiff's work-related abilities.

If Dr. Fleske's opinion had been accorded appropriate weight, the ALJ could not have found plaintiff's shoulder impairment to be non-severe at step two.  **See** 20 C.F.R. § 404.1521.  An impairment is considered not severe only if it is merely a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." **Social Security Ruling 85-28**, 1985 WL 56856 at *3 (SSA 1985).  Without even considering the particular limitations on manual dexterity Dr. Fleske cited, his opinion that plaintiff could lift no more than 20-30 pounds by itself would have limited plaintiff to light work, **see** 20 C.F.R. § 404.1567(b), thus, precluding his past relevant work as a farmer, **see id**. § 404.1567(c).  (**See also** Tr. 27 (opinion of vocational expert that plaintiff's past work was medium exertion level).)  Nor are the medical opinions of the consultative examiner and the state agency examiner[7] sufficiently probative to contradict Dr. Fleske's opinion, as neither source was specifically asked to consider whether the limitations they imposed applied retrospectively to the date last insured.  (**See** Tr. 296-300, 303-309.)

---

[7] Plaintiff suggests in his reply brief that the state agency examiner was actually a single decisionmaker ("SDM").  If true, this fact would further undermine any reliance on that opinion, as the opinion of an SDM, who is not a medical professional of any stripe, is entitled to no weight.  **Velasquez v. Astrue**, 2008 WL 791950 at *3 (D. Colo. Mar. 20, 2008) (Blackburn, J.) (citing **Goupil v. Barnhart**, 2003 WL 22466164 at * 2, n.3 (D. Me. Oct. 31, 2003)).

The improper rejection of Dr. Fleske's opinion also infected the ALJ's determination of plaintiff's credibility. Although "credibility determinations are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence," **White v. Barnhart**, 287 F.3d 903, 909 (10th Cir. 2001) (internal citation and quotation marks omitted), the ALJ here failed to link his credibility determination to any evidence of record, instead relying on a boilerplate recitation that plaintiff's subjective reports of pain and limitation were "not credible to the extent they are no[t] supported by the evidence of record." (Tr. 13.)[8] By failing to properly assess Dr. Fleske's opinion and address the medical evidence supporting plaintiff's claims, the ALJ improperly dismissed plaintiff's testimony as not credible. **See Grogan v. Barnhart**, 399 F.3d 1257, 1266 (10th Cir. 2005). The disability decision, therefore, must be reversed.

Plaintiff asks the court to forgo remand and direct the Commissioner to award him benefits. He argues that pursuant to the Medical-Vocational Guidelines (the "Grids"), a person of advanced age, that is, age 55 or older[9] (**see** 20 C.F.R., Pt. 404, Subpt. P., App. 2, § 201.00(f)) with plaintiff's level of education, who has previously performed skilled or semi-skilled work,[10] but whose skills are not transferrable, would be

---

[8] The ALJ did note that plaintiff stopped working when he sold his farm. (Tr. 13.) To the extent this observation was intended as a statement related to plaintiff's credibility, it fails to acknowledge plaintiff's testimony that he was required to sell the farm *because* his impairments precluded him from continuing to work. (Tr. 23-24.)

[9] In fact, as of his alleged date of onset, plaintiff was only 54 years old, and, thus, fell in the category of "approaching advanced age" for almost the entire first year after his alleged date of onset. **See** 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00(g).

[10] The vocational expert testified at the hearing that plaintiff's past relevant work as a farmer was a "medium job with a skill level of 7." (Tr. 27.) More specifically, the job has a specific vocational preparation ("SVP") level of 7 (**see Dictionary of Occupational Titles** 404.161-010, *Farmer, Field Crop (agriculture)*, **available at** http://www.occupationalinfo.org/40/404161010.html (last accessed March 16,

found disabled (*see id.*, Table 2, Rule 202.06).

I may not accept this invitation. Because the ALJ terminated his examination at step two of the sequential evaluation process, he made no findings regarding plaintiff's residual functional capacity, nor did he question the vocational expert as to other work plaintiff might be able to perform within the limitations imposed by Dr. Fleske. This court is neither empowered nor equipped to make findings regarding the transferability *vel non* of plaintiff's skills given his age, educational and vocational background, and specific functional limitations. The ALJ is both better suited and better situated to make such determinations in the first instance. Accordingly, I find it would be inappropriate for me to exercise my discretion to direct an award of benefits in this case. **See Nielson v. Sullivan**, 992 F.2d 1118, 1122 (10th Cir. 1993).[11]

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That this case is **REMANDED** to the ALJ, who is directed to

    a.    Reconsider and accord proper weight to the opinion of Dr. Fleske;

    b.    Reevaluate plaintiff's alleged impairments in light of the record as a whole

---

2012)), which describes "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation" (*id.* App. C, ¶ II). An SVP of 7 involves work taking over two years and up to four years to learn, *see id.*, and corresponds to skilled work, **Social Security Ruling** 00-4p, 2000 WL 1898704 at *3 (SSA Dec. 4, 2000).

    [11] I do not intimate by my ruling herein that plaintiff is or should be found disabled.

11

     and continue to the subsequent steps of the sequential evaluation process; and

   c. Reassess the disability determination; and

 3. That plaintiff is **AWARDED** his costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1 and 28 U.S.C. § 2412(a)(1).

 Dated March 19, 2012, at Denver, Colorado.

           **BY THE COURT:**

           */s/ Robert E. Blackburn*
           Robert E. Blackburn
           United States District Judge